IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| OMNICARE PHARMACIES OF PENNSYLVANIA WEST, LLC, *d/b/a* OMNICARE PHARMACY SERVICES OF GREENSBURG<br><br>Plaintiff,<br><br>v.<br><br>LATROBE HEALTH LLC, *d/b/a* LATROBE HEALTH AND REHABILITATION CENTER,<br><br>Defendant. | Civil Action No. 2:12-cv-00761<br><br>Judge Mark R. Hornak |

## **MEMORANDUM OPINION**

**Mark R. Hornak, United States District Judge**

With this lawsuit, Plaintiff Omnicare Pharmacies of Pennsylvania West, LLC ("Omnicare West") seeks to have Defendant Latrobe Health, LLC ("Latrobe") pay bills Omnicare West thinks it is due paid. Latrobe has asserted counterclaims and seeks to have the case transferred to the United States District Court for the Eastern District of Michigan, on the grounds that the contract by which it was supposed to pay its bills was both one of adhesion and one related to a larger transaction between other related entities, and litigation surrounding that larger transaction is already occurring in Michigan. Here, as is often the case, the correct outcome turns on whether the correct question has been asked from the outset.

Pending before the Court is Defendant's Motion to Transfer, ECF No. 16 ("Motion"). The Court has considered Defendant's Motion, Plaintiff's Response and Brief in Opposition,

ECF Nos. 17, 18, Plaintiff's Reply, ECF No. 67, and Defendant's Sur-reply, ECF No. 70. For the reasons that follow, Defendant's motion is denied.

## I. FACTUAL BACKGROUND

The principal facts relevant to the determination of the Motion are not in dispute, though they are intricate. Omnicare West is an institutional pharmacy in the business of providing pharmaceutical goods and services to long-term care facilities and skilled nursing facilities. Compl., ECF No.1, ¶ 9. Latrobe operates a nursing facility located at 576 Fred Rogers Drive, Latrobe, Pennsylvania ("Latrobe Facility"). *Id.* ¶ 10. On March 26, 2010, Omnicare West and Latrobe entered into a Pharmacy Services Agreement ("PSA"), wherein they agreed that Latrobe would place orders for pharmaceutical goods and services, and Omnicare West would fill them. *Id.* ¶¶ 11-15. When Latrobe began to fall behind on, and eventually failed to make, its payments, on June 6, 2012, Omnicare West sued, making claims for breach of contract, action on account, quantum meruit, and unjust enrichment. *See id.* ¶¶ 16-51.

Latrobe has filed a number of Amended Answers, all of which include counterclaims against Omnicare West. *See* ECF No. 68, 2d Am. Ans. & Countercl. Latrobe's counterclaims center on the fact that Latrobe believes that it was strong-armed into entering into the PSA with Omnicare West as part of a bigger deal between corporate entities related to the parties here. Latrobe further asserts that Omnicare West conspired with those entities in order to force Latrobe to make a bad deal. *See id.* ¶¶ 18-20. Latrobe asserts claims of breach of contract, unjust enrichment, and civil conspiracy against Omnicare West.

That bigger deal was an Asset Purchase Agreement ("APA"), wherein a number of companies, including Extendicare, Inc. ("Extendicare") agreed to sell a number of long-term care facilities, including the Latrobe Facility, to a number of other companies, including one called

2

576 Latrobe, LLC ("576 Latrobe"). *See id.* ¶ 4; ECF No. 56 at 186. 576 Latrobe is Latrobe's "landlord," and it seems as if it was the real estate of the Latrobe Facility that was the direct subject of the APA. *See* ECF No. 70-1 at 3; ECF No. 56 at 186. Therefore, none of the present parties in this litigation were part of the APA. The APA, by its own terms, is governed by the laws of the state of Michigan, ECF No. 56 at 59 ¶ 14.15, but "[w]ith respect to the Latrobe Facility," the APA is governed by the laws of the Commonwealth of Pennsylvania, *id.* at 189 ¶ 3(o).

By way of amendment to the APA signed March 29, 2010, the parties to the APA agreed that Latrobe (the Defendant here) and Extendicare would enter in an Operations Transfer Agreement ("OTA"). *Id.* at 192 ¶ 7. In the OTA, also signed March 29, 2010, Extendicare transferred to Latrobe, a "New Operator," a lease for the operation and possession of the Latrobe Facility. *Id.* at 269. The OTA stated, "This Agreement has been executed and delivered in, and shall be interpreted, construed, and enforced pursuant to and in accordance with the laws of the Commonwealth of Pennsylvania." *Id.* at 296 ¶ 20.

Exactly how the APA and the OTA relate to the PSA, i.e., the agreement between Latrobe and Omnicare West, is unclear. However, one of the "conditions precedent" of the APA (to which Latrobe itself was not a party) was that "Each New Operator has entered into a Standard Facility Services Contract with Omnicare, Inc., or its Affiliate, for a period of three (3) years . . . ". *Id.* at 49 ¶ 10.5. Additionally, although the OTA makes reference to assignment of contracts to Latrobe, and in particular "the Omnicare Contract," the term "Omnicare Contract" is nowhere defined in the OTA or it appendices. *See id.* at 288 ¶ 12.3. Latrobe contends that it was harmed when it was forced to enter into the PSA a prerequisite to the APA being finalized, but

3

Omnicare West did not divulge the terms of the PSA until very close to the closing date of the APA, leaving Latrobe with no choice but to take it and its unfair terms.

In either event, Omnicare West and Latrobe agreed to the PSA on March 26, 2010. The PSA states that it "shall be governed by and construed and enforced in accordance with the substantive law of the state in which the Facility is located," which is Pennsylvania. ECF No. 17-2 at 3 ¶ 8.11. It also states that "[t]he parties stipulate and agree that the state and federal courts of [Pennsylvania] . . . shall have exclusive jurisdiction over any dispute or controversy between the parties arising under or relating to this Agreement, to the exclusion of any and all other possible venues . . . and waives any defense of lack of jurisdiction, improper venue, or forum non conveniens." *Id.*

The identity and citizenship of the relevant entities are as follows: Plaintiff Omnicare Pharmacies of Pennsylvania West, LLC ("Omnicare West") is a limited liability company organized in Kentucky and maintains a principal place of business in Kentucky. It is a wholly-owned subsidiary of NeighborCare Pharmacy Services, Inc. ("NeighborCare"). ECF No. 2. Neighborcare is a corporation incorporated under the laws of the State of Delaware and maintains a principal place of business in Kentucky, and is the sole member and manager of Omnicare West. *Id.* NeighborCare is a wholly-owned indirect subsidiary of Omnicare, Inc., a publicly traded company. *Id.* Defendant Latrobe Health LLC ("Latrobe") is a limited liability company organized in Pennsylvania and it maintains a principal place of business in Pennsylvania. ECF No. 66 at ¶ 2. Latrobe's sole member is Magnum Opco Holdings, LLC ("Opco"). Opco is a Delaware limited liability company with its principal place of business in Florida. Opco's sole member is Avi Klein, a Florida resident. ECF No. 23 at 23 ¶¶ 3-4.[1] 576

---

[1] It is worth noting that for this reason, Latrobe, as an LLC, is a citizen only of the state of Florida, where Omnicare West is not also a citizen, creating complete diversity. *See Zambelli Fireworks Mfg. Co. v. Wood*, 592 F.3d 412, 420

4

Latrobe, LLC ("576 Latrobe"), a Delaware limited liability company, is Latrobe's "landlord." *See* ECF No. 70-1 at 3; ECF No. 56 at 186. Extendicare Health Facilities, Inc. ("Extendicare") is a Wisconsin corporation, and apparently has a principal place of business in Wisconsin. ECF No. 23 at 23 ¶ 5, ECF No. 56 at 169. The parties have not provided any information as to where the various contracts were negotiated (if they can be said to have been physically negotiated in any state), although the emails filed on the docket reveal communications relating to drafting the PSA between individuals in Florida, Wisconsin, and the District of Columbia. *See generally* ECF No. 55.[2]

Throughout this case, Latrobe has sought to transfer it to the Eastern District of Michigan under 28 U.S.C. § 1404, where there is litigation pending surrounding the APA and its other satellite contracts. *See* E.D. Mich. Dkt. No. 1:12-cv-12785-TLL-CEB. Latrobe has also filed a number of Amended Answers with Counterclaims, the second of which included Extendicare and Omnicare, Inc. as third-party defendants. *See* ECF No. 23, filed Aug. 31, 2012. On October 22, 2012, this Court held a motion hearing on this Motion, and other then-pending motions[3] involving Extendicare and Omnicare, Inc., and set deadlines for further briefing on the Motion. On November 30, 2012, by way of another Amended Answer, Latrobe dropped its third-party claims against Extendicare and Omnicare, Inc., leaving Omnicare West and Latrobe once more as the only parties to this case. The Motion to Transfer is now ripe for disposition.

---

(3d Cir. 2010) (LLC's citizenship determined by that of its members, like a partnership; if one of LLC's members is another LLC, the chain is "traced through however many layers of partners or members there may be").

[2] "If you need to take a deep breath after all that, you're not alone." *Kloeckner v. Solis*, 133 S.Ct. 596, 605 (2012) (Kagan, J.).

[3] The Court is not unaware that some of those other motions remain pending at this time, and saves for another day ruling on them. Dealing with the transfer motion comes first, as its disposition decides the often central question of "who decides?"

## II. DISCUSSION

In spite of the somewhat convoluted playbill of characters involved in this dispute, the legal analysis is rather straightforward. Under 28 U.S.C. § 1404(a), "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division *where it might have been brought.*" (emphasis added). Thus, the first question before this Court is, could this case have been brought in the Eastern District of Michigan?

Where a case "might have been brought" is determined by evaluating the circumstances as they existed at the time the case was initiated. *See Hoffman v. Blaski*, 363 U.S. 335, 342-43 (1960) (A court must look to "the situation which existed when the suit was instituted"). Additionally, to show that a case "might have been brought" in a given district, "the moving party must demonstrate that venue, personal jurisdiction, and subject matter jurisdiction would all have been proper in the proposed transferee district." *High River Ltd. P'ship v. Mylan Lab., Inc.*, 353 F. Supp. 2d 487, 493 (M.D. Pa. 2005).[4]

More specifically, the party seeking transfer must demonstrate that there was personal jurisdiction over the *defendant* in the proposed transferee district at the time of filing, because a plaintiff would have necessarily consented to personal jurisdiction by filing there. *See Viron Int'l Corp. v. David Boland, Inc.*, 237 F. Supp. 2d 812, 818 (W.D. Mich. 2002); *The Fox Group, Inc. v. Cree, Inc.*, 749 F. Supp. 2d 410, 415 (E.D. Va. 2010); *see also Sunbelt Corp. v. Noble,*

---

[4] Under 28 U.S.C. § 1391, venue is proper in:
    (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;
    (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or
    (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.
Here, however, the Court need not address whether the § 1391 factors are satisfied in the proposed transferee district, if personal jurisdiction serves as a separate bar to where a case "might have been brought" under § 1404(a).

*Denton & Assoc., Inc.*, 5 F.3d 28, 31-33 (3d Cir. 1993) (because one of defendants was not subject to personal jurisdiction in Texas, transfer under § 1404(a) was improper because the Southern District of Texas was not a district in which the action "might have been brought"). This is so regardless of the fact that the defendant might have sued (but did not sue) the plaintiff in the transferee forum on claims that constitute its present counterclaims. *See Viron*, 237 F. Supp. 2d at 818 ("Requiring this Court to speculate about personal jurisdiction in some hypothetical lawsuit filed by the defendants exceeds the analysis required by § 1404(a)."); *cf. The Fox Group*, 749 F. Supp. 2d at 415. Thus, while the parties in their briefing have focused on whether *Omnicare West* was subject to personal jurisdiction in the Eastern District of Michigan, the proper question is whether *Latrobe* was.[5]

To this end, Latrobe may not now establish personal jurisdiction over itself in Michigan by way of its own consent. Given the temporal window in when personal jurisdiction must be evaluated, while personal jurisdiction (and venue) may generally be waived, for the purposes of § 1404(a), a defendant seeking to have venue transferred to a district in which it was not subject to personal jurisdiction at the time of filing cannot by subsequent waiver create it. *See Hoffman*, 363 U.S. at 342-43 ("We do not think the § 1404(a) phrase 'where it might have been brought' can be interpreted to mean, as petitioners' theory would require, 'where it may now be rebrought, with defendants' consent'"); *High River*, 353 F. Supp. 2d at 493. Therefore, properly framed, the question before this Court is whether Latrobe has carried its burden of demonstrating that, as of June 6, 2012, it was subject to personal jurisdiction in the State of Michigan.

Under Fed. R. Civ. P. 4(e), a federal district court sitting in diversity has personal jurisdiction over a nonresident defendant to the extent authorized under the law of the forum

---

[5] As *Viron* demonstrates, the parties here are not the first to have flip-flopped this analysis. *See* 237 F. Supp. 2d at 818 ("Plaintiff confuses the analysis by stating that *defendants* could not have sued plaintiff in Florida. The issue, however, is whether *plaintiff* not *defendants* could initially have filed suit in Florida.").

state in which the district court sits. *Sunbelt*, 5 F.3d at 31.[6] The party seeking to assert personal jurisdiction bears the burden of demonstrating that such jurisdiction exists. *Bird v. Parsons*, 289 F.3d 865, 871 (6th Cir. 2002). Personal jurisdiction may be found generally or specifically. "General jurisdiction depends on continuous and systematic contacts with the forum state, so that the courts may exercise jurisdiction over any claims a plaintiff may bring against the defendant." *Miller v. AXA Winterthur Ins. Co.*, 694 F.3d 675, 679 (6th Cir. 2012); *see Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 416 (1984). Here, Latrobe has not alleged, nor has it adduced any facts to suggest, that it had engaged in "continuous and systematic contacts" with Michigan. Therefore, courts in Michigan may not exercise general personal jurisdiction over Latrobe.

"Specific jurisdiction, on the other hand, grants jurisdiction only to the extent that a claim arises out of or relates to a defendant's contacts in the forum state." *Miller*, 694 F.3d at 679. In order for specific jurisdiction to be met, the factors of both Michigan's long-arm statute, as well as constitutional due process, must be satisfied. *Id.* Michigan's long-arm statute allows personal jurisdiction over an unincorporated association that is involved in "the transaction of any business in the state." Mich. Compl. Laws § 600.735(1).[7] Given the breadth of this statutory language ("the slightest act of business in Michigan is a sufficient business transaction," *Miller*, 694 F.3d at 679), although the Court does not have before it any evidence that Latrobe conducted

---

[6] Latrobe is not a resident of Michigan. Latrobe is a Pennsylvania LLC with its principal place of business in Pennsylvania. Its sole member, Opco, is a Delaware LLC with its principal place of business in Florida. Opco's sole member is Avi Klein, a Florida resident.

[7] This is the same rule that applies to corporations, Mich. Compl. Laws § 600.715(1). *See MCNIC Oil & Gas Co. v. IBEX Res. Co., L.L.C.*, 23 F. Supp. 2d 729, 734 (E.D. Mich. 1998).

8

any act of business in Michigan,[8] the Court will assume such contact *arguendo*, and analyze Latrobe's contacts under constitutional due process.

Constitutional due process is analyzed under the now-familiar minimum contacts standard. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985); *Int'l Shoe Co. v. Washington*, 326 U.S. 310 (1945). The Sixth Circuit has developed a three-part test for recognizing due process in personal jurisdiction cases:

> "First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable."

*Miller*, 694 F.3d at 680 (quoting *S. Mach. Co. v. Mohasco Indus., Inc.*, 401 F.2d 374, 381 (6th Cir. 1968)).[9] Latrobe has not offered facts that demonstrate that any of the above three factors are met.

In terms of purposeful availment, "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing . . . must be evaluated in determining whether the defendant purposefully established minimum

---

[8] Because Latrobe is the party seeking transfer, the ball is in Latrobe's court to demonstrate that the case could have been brought in Michigan. Its failure to show that Michigan had personal jurisdiction over it is a sufficient basis to deny the Motion.

[9] Courts in this Circuit appear not to have addressed the question of whether, when a federal district court is evaluating personal jurisdiction in a state that lies within another federal circuit, its own circuit's law governing constitutional due process, or that of the other circuit containing the state at issue, governs. This Court finds some Third Circuit guidance suggesting that Sixth Circuit law may be the more correct source in *Sunbelt*, which applied authorities from the state courts of Texas and the Fifth Circuit when evaluating whether personal jurisdiction over a defendant in Texas satisfied constitutional due process. *See Sunbelt*, 5 F.3d at 32; *see also High River*, 353 F. Supp. 2d at 495-496 (looking to Second Circuit cases in determining whether constitutional due process was satisfied in New York). However, the Court concludes that in a case such as this, this question is ultimately rather academic, and does not warrant more searching scrutiny. Third Circuit law governing minimum contacts strongly resembles Sixth Circuit law, and the facts of this case do not provide a "close call" where the ultimate outcome would hang in the balance depending on which Circuit's minimum contacts cases are applied. *See D'Jamoos ex rel. Weingeroff v. Pilatus Aircraft Ltd.*, 566 F.3d 94, 102 (3d Cir. 2009) (applying nearly identical three-part test for minimum contacts as that articulated by the Sixth Circuit in *Miller*, 694 F.3d at 680).

contacts within the forum." *Burger King*, 471 U.S. at 479. The cases surveyed by the Sixth Circuit in *Miller* emphasize that especially when none of the terms of a contract are to be performed in the forum state (for these purposes, Michigan), the fact that an out-of-state party may have contracted with an in-state party alone does not establish minimum contacts. *See Miller*, 694 F.3d at 680 (collecting cases). In *Miller*, the fact that a defendant sent a letter to a plaintiff in Michigan regarding a liability at issue did not establish minimum contacts in Michigan, where the obligations and liabilities were centered in Switzerland. *Id.*

This case was initiated by Omnicare West against Latrobe, centering on Latrobe's obligations under the PSA. Omnicare West is a Kentucky LLC with its principal place of business in Kentucky, and its parent Neighborcare is incorporated in State of Delaware and maintains a principal place of business in Kentucky. Latrobe is a Pennsylvania LLC with a principal place of business in Pennsylvania, and its sole member's sole member is a Florida resident. The PSA relates to providing services only for the Latrobe Facility, located in Pennsylvania, and no Michigan contacts whatsoever can be discerned from the obligations under the PSA. By its own terms, the PSA states that it shall be governed exclusively by Pennsylvania law and that the Pennsylvania courts shall have exclusive jurisdiction over disputes relating to it. ECF No. 17-2 at ¶ 8.11. Under *Burger King*, a choice of law provision does not establish personal jurisdiction in itself, but "reinforce[s a party's] deliberate affiliation with the forum State and the reasonable foreseeability of possible litigation there." 571 U.S. at 482. The singular evidence relating to the negotiation of the PSA, a chain of emails, reveals only communications between individuals in Florida, Wisconsin, and the District of Columbia. *See*

*generally* ECF No. 55. Therefore, no Michigan contacts whatsoever can be discerned relating to the PSA, which is at the heart of Plaintiff's Complaint.[10]

Even if this case could be viewed in a broader light to also encompass Latrobe's counterclaims as they relate to its obligations under the OTA, the OTA cannot serve as the basis for personal jurisdiction in Michigan either. The OTA was agreed upon between Extendicare, Inc., a Wisconsin corporation, and Latrobe. By its own terms, the OTA was "executed and delivered in, and shall be interpreted, construed, and enforced pursuant to and in accordance with the laws of the Commonwealth of Pennsylvania." ECF No. 56 at 296 ¶ 20. Latrobe has provided no evidence in support of any connection between the OTA and the state of Michigan.

Finally, even if the case could be viewed in a broader light still to encompass Latrobe's counterclaims as they relate to the APA, Latrobe itself was not a party to that agreement. Latrobe 576 was a party to the APA, and Latrobe 576 is only the "landlord" of Latrobe.[11] Therefore, any contacts between Latrobe 576 and Michigan by way of the APA cannot be attributed to Latrobe for jurisdictional purposes.

In sum, the facts here demonstrate that although the Court cannot discern any direct evidence of any contacts between Latrobe and the State of Michigan whatsoever, whatever

---

[10] It is worth noting that any contacts between Mr. Klein and the State of Michigan, outside those relating to Latrobe and the facts described above, are irrelevant to the determination of whether there is personal jurisdiction over Latrobe. In other words, while Mr. Klein's personal citizenship is relevant to determine Latrobe's citizenship for purposes of diversity/ subject matter jurisdiction, Mr. Klein's contacts with Michigan (outside of his activities *vis a vis* Latrobe) cannot be used to establish personal jurisdiction over Latrobe there. *See Mountain Funding, LLC v. Blackwater Crossing, LLC*, 3:05 CV 513 MU, 2006 WL 1582403, at *3 (W.D.N.C. June 5, 2006) ("[T]he practice of disregarding a limited liability company as an entity and looking to the citizenship of its members is only used to determine whether a court has diversity for subject matter jurisdiction. *See* 28 U.S.C. § 1332(c)(1) (2000). This principle has not been applied to personal jurisdiction, which presents distinct due process issues."); *see also King v. Hawgwild Air, LLC*, CIV.A. 3:08-CV-0153-, 2008 WL 2620099, at *5 (N.D. Tex. June 27, 2008) ("personal jurisdiction over an LLC member should not be extended to the LLC based upon the member's unrelated contacts.").

[11] It is also worth noting that while the majority of the parties to the APA were Michigan corporations, and the APA generally is governed under the laws of the State of Michigan, by way of Amendment, even the APA as it relates to the Latrobe Facility is governed by Pennsylvania law. *See id.* at 189 ¶ 3(o). This further undermines any hypothetical connection between Latrobe and Michigan via the Latrobe Facility.

contacts might have somehow existed by way of the broader deal memorialized by the APA would have been at best fortuitous and attenuated. The PSA and the OTA in particular demonstrate that all of the rights and obligations surrounding both contracts were solely centered on the Commonwealth of Pennsylvania, and indeed, Pennsylvania to the exclusion of all other fora. Therefore, it would be unreasonable to conclude that these contacts evinced any other understanding such that Michigan could be a proper forum over these claims.

Because there was no personal jurisdiction over Latrobe in the State of Michigan at the time this case was initiated, this case could not have been brought there under § 1404(a). Latrobe's Motion to transfer venue is denied.

An appropriate order will issue.

_____
Mark R. Hornak
United States District Judge

Dated: March 15, 2013

cc: All counsel of record